Johnny Lee Lindsey sued his employer, Watson Van Lines, seeking workers' compensation benefits. After a trial, the circuit court found that Lindsey "did not present credible legal evidence that a compensable injury had occurred." As a result, the trial court found that Lindsey had not carried his burden of proof so as to entitle him to recover workers' compensation benefits, and the court entered a judgment in favor of Watson Van Lines. Lindsey appeals.
The standard of review this court must apply in this case is derived from § 25-5-81(e)(1), Ala. Code 1975, which provides: "In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness." Furthermore, the Workers' Compensation Act provides that "in reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." § 25-5-81(e)(2). The Alabama Supreme Court has defined "substantial evidence" as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989); Ex parteTrinity Industries, Inc., 680 So.2d 262, 268 (Ala. 1996).
Lindsey, who was 57 at the time of his alleged accident, worked as a "lumper," loading and unloading furniture on moving vans. He claimed that while working in Baltimore, Maryland, on June 29, 1994, he stepped into a hole and fell. Lindsey said that a coworker named Joe was helping him move a washing machine from the house to the van when he stepped into the hole; however, no one had found that coworker by the time of trial. Lindsey also said that his supervisor, Frank Owens, was on the truck when he fell and that he believed Owens saw him on the ground "because anybody when you hear a person slip, you will come and look and see what the problem is."
Owens, however, said he did not see Lindsey fall and that he did not know Lindsey had fallen until later that night, when Lindsey told him he had slipped. Owens said that Lindsey did not say he was hurt — he just said he slipped but that everyone just kept working. Lindsey testified that after his fall, he continued to work another seven hours, loading the moving van.
The day after Lindsey says he slipped, he took an already-scheduled 12-hour bus trip home to Selma. On July 4, four days after the trip home, Lindsey first sought medical attention for his injury, complaining of back and neck pain. Lindsey's testimony regarding his injury is inconsistent. Medical records reveal that he told some doctors he stepped into the hole with his right foot; he told other doctors he stepped into the hole with his left foot. He told some doctors he fell backward; he told another that he fell forward.
In his trial testimony, Lindsey made statements contradicting statements in medical *Page 776 
records concerning previous injuries or health problems. When confronted with those records at trial, Lindsey claimed that he had not experienced the neck and back problems described in the records and that the doctors had erred. He also denied telling a triage nurse that he was in chronic pain as the result of a motor vehicle accident. He denied ever having been in an accident and said that the nurse "got the wrong person."
Lindsey's primary treating physician, Dr. Robert Bradley, testified in his deposition that a functional capacity evaluation conducted on Lindsey showed that he was not using his best effort in performing the tests making up the evaluation.
Lindsey claims that he is 100% disabled as a result of his injury. His vocational expert testified that Lindsey has lost access to all jobs in the state, given his age, his seventh-grade education, and his current physical condition.
The record also shows that Lindsey, who has collected workers' compensation benefits in the past, had attempted to be declared totally and permanently disabled three years before the accident in question in this case, but that the Social Security Administration had turned down that request. In 1982, Lindsey applied for total disability benefits from the Social Security Administration for psoriasis, but that claim was denied as well.
Lindsey claims that the trial court erred in finding that he had " `failed to establish that he sustained a compensable injury' because substantial evidence was presented at trial that a compensable injury occurred." In its judgment, the trial court found that Lindsey did not present credible legal evidence indicating that an injury had occurred. In other words, the quantity of evidence Lindsey presented may have been sufficient to sustain a finding in his favor, but the trial court obviously did not believe that evidence, so that the quality of Lindsey's evidence was insufficient to support a finding in his favor.
We are mindful that the Workers' Compensation Act is to be liberally construed to accomplish its beneficent purposes and that doubts must be resolved in favor of the employee.Scott Paper Co. v. Smith, 600 So.2d 269 (Ala.Civ.App. 1992). However, a trial court's factual findings based upon conflicting ore tenus evidence will not be disturbed on appeal unless such findings are "clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence." American Petroleum Equipment v. Fancher,708 So.2d 129, 132 (Ala. 1997). It is the duty of the trial court, which has the opportunity to observe witnesses and their demeanors, and not the appellate court, to weigh the evidence presented. Webb Oil Co. v. Holmes, 660 So.2d 1316
(Ala.Civ.App. 1995).
In this case, the trial court did not believe that Lindsey's testimony was credible. The court had an opportunity to observe Lindsey's demeanor as he testified. The evidence shows that Lindsey was inconsistent in his description as to how the accident happened. He also was less than truthful regarding the nature, the extent, and even the existence of past injuries. We find it highly unlikely that all of the doctors Lindsey has dealt with in the past erred in writing down his various ailments. From the evidence, the trial court could have determined that either Lindsey had not been truthful in his dealings with those doctors, or he was not being truthful under oath at his trial.
Lindsey also argues that the trial court's judgment is "insufficient in that it failed to contain any fact relative . . . to whether Lindsey failed to present credible legal evidence that a compensable injury occurred." A workers' compensation judgment must contain findings of fact and conclusions of law. § 25-5-88, Ala. Code 1975. Substantial compliance with that requirement is sufficient. McCutcheonv. Champion International Corp., 623 So.2d 742
(Ala.Civ.App. 1993). "If the trial court's findings are meager or omissive, this court may look to the record to determine if the trial court's judgment should be upheld." Id.
at 743.
As discussed above, our review of the record shows substantial evidence to support the trial court's judgment in favor of Watson Van Lines; therefore, even if we were to find that the trial court's findings of fact and conclusions of law were meager or omissive, *Page 777 
such a finding would not result in reversible CoastalLumber Co. error.
Lindsey contends that the trial court erred in admitting certain of his medical records, because Watson Van Lines did not provide him with those records until 14 days before the trial. Section 25-5-81(f)(4), Ala. Code 1975, provides, in pertinent part, as follows:
 "Copies of records obtained by one party shall be furnished by certified mail to the other party not less than 21 days prior to trial, unless the party offering the records can establish unusual circumstances justifying their admission. . . . [T]he party not offering the records of a physician's treatment shall, without regard to the limitation set forth herein, have the right to depose prior to trial the physician whose records of treatment are to be offered by any other party."
According to the record, Watson Van Lines, during discovery, requested Lindsey's records from the Social Security Administration and the Veteran's Administration. Lindsey did not provide his records to Watson Van Lines; he told Watson Van Lines that he could not get his records. Watson Van Lines then reached an agreement with Lindsey's attorney for Lindsey to authorize Watson to receive those records. After receiving Lindsey's authorization, Watson subpoenaed the records. When it received the records, it forwarded a copy on to Lindsey.
The trial court found this to be sufficient "unusual circumstances," as contemplated by § 25-5-81(f)(4), to permit admission of the records. The Alabama Supreme Court has stated its commitment to the following policy regarding discovery:
 " `Generally speaking, the purpose of modern discovery is to assist the administration of justice, to aid a party in preparing and presenting his case or his defense, to advance the function of a trial in ascertaining the truth, and to accelerate the disposition of suits. Beyond this, the rules for discovery are designed to eliminate, as far as possible, concealment and surprise in the trial of lawsuits to the end that judgments be rested upon the real merits of cases and not upon the skill and maneuvering of counsel.'"
Coastal Lumber v. Johnson, 669 So.2d 803, 811
(Ala. 1995) (quoting 23 Am.Jur.2d Depositions andDiscovery § 155 (1956)). Whether to admit evidence that may not have been properly disclosed during discovery is within the sound discretion of the trial court. CoastalLumber Co., supra. This court will not reverse the decision of the trial court "[a]bsent palpable abuse of that discretion." Id.
We agree with the trial court that the circumstances of this case are unusual enough to merit admission of the medical records even though Lindsey received them less than 21 days before trial. Lindsey was aware that Watson Van Lines wanted his medical records; he authorized Watson Van Lines to get the records; and he was aware the records were going to be used at trial. There is no evidence, or even a suggestion, that Watson Van Lines delayed getting the records to Lindsey once it received them from the Social Security Administration or the V.A.
Lindsey's only argument as to why the records should not have been admitted was that he received them less than 21 days before trial. He does not address whether the circumstances surrounding his receipt of the records were sufficiently "unusual" to allow admission of the records. There is nothing improper in the actions of Watson Van Lines. The trial court did not abuse its discretion in admitting the medical records.
Finally, Lindsey argues that the trial court erred in relying on evidence he claims was never admitted into evidence. However, the record shows that the exhibits Lindsey disputes were admitted. There is no merit to his contention.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.
CRAWLEY and THOMPSON, JJ., concur in the result. *Page 778