882 So.2d 347 (2003)
Salvador OSORIO
v.
K & D ERECTORS, INC., et al.
Gonzalez Law Firm, L.L.C.
v.
Salvador Osorio and K & D Erectors, Inc.
2010756 and 2010813.
Court of Civil Appeals of Alabama.
May 2, 2003.
Order Overruling Rehearing September 12, 2003.
*348 Neil Taylor, Jr., Russellville, for Salvador T. Osorio.
George M. Vaughn of Paden & Paden, Birmingham, for Gonzalez Law Firm, L.L.C.
Keith J. Pflaum and Kathryn L. Harman of Porterfield, Harper & Mills, P.A., Birmingham, for K & D Erectors, Inc.
YATES, Presiding Judge.
Salvador Osorio sued his employer, K & D Erectors, Inc., on May 24, 2000, in the Shelby Circuit Court seeking to recover workers' compensation benefits for injuries he sustained during the course of his employment with K & D. The complaint was filed on behalf of Osorio by Marco Gonzalez of the Gonzalez Law Firm, L.L.C. The complaint was not verified and no application to employ an attorney was filed.
Osorio also sued K & D in the Colbert Circuit Court on November 28, 2000, seeking to recover workers' compensation benefits for the work-related injuries made the basis of the Shelby County action. This complaint was filed on behalf of Osorio by attorney Neil Taylor, Jr. This complaint was verified and was accompanied by an application to employ Taylor as Osorio's attorney, which the trial court granted.
Osorio filed a document entitled "Declaration of Attorney Authorization" in the Shelby Circuit Court on December 7, 2000, stating that Taylor was his "exclusive and only" attorney and that neither Gonzalez nor any member of the Gonzalez Law Firm was authorized to represent him. Gonzalez and the Gonzalez Law Firm[1], on December 12, 2000, filed, in the Shelby Circuit Court, a claim and lien for legal services pursuant to § 34-3-61, Ala.Code 1975, upon all proceeds received by Osorio as a result of his action seeking recovery for his on-the-job injuries suffered while employed by K & D. Gonzalez sought a 15% attorney fee and the reimbursement of expenses he had incurred while he represented Osorio. On December 18, 2000, Osorio's sister, Minerva T. Osorio, filed an affidavit in response to Gonzalez's claim for an attorney fee. On January 30, 2001, Gonzalez filed an application to employ an attorney seeking to represent Osorio in the Shelby County workers' compensation action, and an addendum to the claim for an attorney fee.
*349 On December 18, 2000, Osorio filed in the Colbert Circuit Court a motion for attendant-care expenses, alleging that as a result of his workplace accident he was blind, his left leg was partially paralyzed, and he had no use of his left arm and that he was in need of attendant care. On December 20, 2000, Osorio moved to have the Shelby County action transferred to Colbert County. This motion was denied. Subsequently, on February 15, 2001, Osorio moved to have the Colbert County action transferred to Shelby County. On February 21, 2001, Osorio filed in the Shelby Circuit Court the motion seeking attendant-care expenses. The Colbert County action was transferred to Shelby County on March 1, 2001; the cases were consolidated for purposes of discovery and trial.
Following an ore tenus proceeding, the trial court, on December 28, 2001, entered an order finding Osorio to be permanently and totally disabled; denying Osorio's request for attendant-care expenses or additional home-care expenses for in-home health-care professionals; awarding Taylor an attorney fee of 3% from Osorio's recovery; and denying Gonzalez's claim for an attorney fee.[2] Both Osorio and the Gonzalez Law Firm appeal following the denial of their postjudgment motions.
This case is governed by the 1992 Workers' Compensation Act. This Act provides that an appellate court's review of the standard of proof and its consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, the judgment entered on those findings will not be reversed if the findings are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court "has defined the term `substantial evidence,' as it is used in § 12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).

Osorio's Claim for Attendant-Care Expenses
Osorio was employed by K & D as a construction worker. On December 14, 1998, Osorio fell approximately 30 feet from a roof and suffered a severe closed-head injury. Osorio suffered numerous other injuries, including the loss of the use of his left arm; partial paralysis of his left foot; and multiple fractures of the skull, transverse process, and right ribs. He was rendered legally blind and deaf in his right ear, and he suffered severe cognitive and language deficits because of the fall. It is undisputed that Osorio was rendered permanently and totally disabled as a result of his workplace accident.
Osorio lives with family members who help care for him; his family members assist him in grooming, personal hygiene, preparing food, bathing, and dressing. Osorio argues that his family is entitled to receive $400 per week in attendant-care expenses from K & D as reimbursement for caring for him. K & D argues that the Workers' Compensation Act does not require the payment of such expenses.
*350 The trial court specifically found that the Act does not provide for the payment of attendant-care expenses to an employee's family for assistance with the employee's daily living. Section 25-5-77(a), Ala.Code 1975, provides, in part:
"[T]he employer ... shall pay the actual cost of the repair, refitting, or replacement of artificial members damaged as the result of an accident arising out of and in the course of employment, and the employer ... shall pay ... reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident."
Section 25-5-77(a), Ala.Code 1975, also requires the employer to reimburse hospitals, ambulatory surgical centers, licensed outpatient rehabilitation facilities, and accredited diagnostic facilities for treatment provided or services rendered to the employee.
In Ex parte City of Guntersville, 728 So.2d 611 (Ala.1998), the employee, a policeman, was rendered a paraplegic after being shot in the back while on duty. The employee purchased a van and requested the City to reimburse him for the purchase price of the van. The City agreed to install a wheelchair lift, but refused to reimburse the employee for the full purchase price of the van. The issue as outlined by the supreme court was whether § 25-5-77(a), Ala.Code 1975, required the City to furnish the disabled employee with a van. In determining that the City was not required to reimburse the employee for the purchase price of the van, our supreme court stated:
"Our workers' compensation system was designed to provide limited, but guaranteed, benefits to employees injured on the job. In addition to those benefits, employers are required to pay for medical and rehabilitative treatment. However, we hold that those benefits do not include the purchase price of a motor vehicle. Put simply, a motor vehicle is not a device that, in and of itself, can serve to improve a disabled claimant's condition. Its only use is to improve the claimant's independent functioning. While human concern would cause one to wish that a disabled person would reach the maximum possible level of independent functioning, we believe that allowing reimbursement for such costs as are claimed in this case would stretch the workers' compensation statute beyond its intended meaning."
Id., at 616-17.
Based on our supreme court's interpretation of § 25-5-77(a), Ala.Code 1975, in Ex parte City of Guntersville, we are compelled to hold that that provision does not require an employer to provide attendant-care expenses to the family of a permanently and totally disabled employee for assisting the employee in his daily functioning. Like the van in Ex parte City of Guntersville, the attendant care provided by Osorio's family, while it aids his independent functioning, will not serve to improve his physical or mental condition.
Minnesota, the state upon which Alabama's Workers' Compensation Act is modeled, specifically provides for the payment of nursing services provided by the family members of a permanently and totally disabled employee. See Minn.Stat., § 176.35(1)(b) (2000). Alabama's Act, however, contains no such provision. A similar provision would provide a great service to the employee and his or her family. It is the duty of our Legislature to change the existing law as it sees fit in order to provide for the payment of attendant-care expenses in situations such as the one presented by the facts of this case. *351 Accordingly, we conclude that the trial court did not err in denying Osorio's claim for attendant care expenses.

Gonzalez's Claim for an Attorney Fee
Gonzalez was hired in February 1999 to represent Osorio in his workers' compensation claim against K & D, and he filed an unverified complaint on behalf of Osorio. No application to employ an attorney was filed at the time and approved by the court. Gonzalez performed various services for Osorio, including negotiating a settlement of the workers' compensation claim with K & D. Subsequently, Osorio dismissed Gonzalez and hired Taylor to represent him in the workers' compensation action. Gonzalez then filed, pursuant to § 34-3-61, Ala.Code 1975,[3] his claim and lien for legal services rendered, seeking an attorney fee of 15%.
Section 25-5-88, Ala.Code 1975, provides that litigation of a disputed workers' compensation claim begins with the filing of a verified complaint. Section 25-5-90, Ala.Code 1975, provides, in part:
"(a) Unless otherwise provided in this chapter, no part of the compensation payable under this article and Article 4 of this chapter shall be paid to an attorney for the plaintiff for legal services, unless upon the application of the plaintiff, the judge shall order or approve of the employment of an attorney by the plaintiff."
Gonzalez began this litigation by filing an unverified complaint in Osorio's name without any application by Osorio requesting Gonzalez's employment and without the Shelby Circuit Court's ever ordering or approving the employment of Gonzalez by Osorio. Gonzalez did file an application for employment of an attorney; however, he did not do so until Osorio had filed a document stating that Gonzalez and his firm were not authorized to act on his behalf. Accordingly, we conclude that the trial court did not err in denying Gonzalez's claim and lien for legal services and his request for an attorney fee.

The Award of a 3% Attorney Fee to Taylor
Osorio contends that Taylor is entitled to an attorney fee of 15% rather than the 3% awarded by the trial court. Section 25-5-90(a), Ala.Code 1975, provides, in part:
"[T]he judge, upon the hearing of the complaint for compensation, either by law or by settlement, shall fix the fee of the attorney for the plaintiff for his or her legal services and the manner of its payment, but the fee shall not exceed 15 percent of the compensation awarded or paid."
The trial court has broad discretion in awarding an attorney fee in a workers' compensation case so long as the award does not exceed 15% of the compensation awarded or paid. Merico, Inc. v. Sparks, 567 So.2d 315 (Ala.Civ.App.1990).
In awarding Taylor an attorney fee of 3%, the trial court stated:

*352 "(1) All of the testimony and medical evidence presented in this case indicates that soon after the plaintiff's accident it became obvious that he was very seriously injured, and in fact, the defendant, after having negotiated with Mr. Gonzalez, had acknowledged that the plaintiff was permanently disabled and was entitled to receive the maximum benefits under the Workers' Compensation laws before Mr. Taylor had ever filed the litigation on behalf of the plaintiff in Colbert County, and before he began representing the plaintiff in the Shelby County case which had been filed by Mr. Gonzalez.
"(2) The only new issues which Mr. Taylor asserted on behalf of the plaintiff after he became attorney of record for the plaintiff were the claims for `attendant care expenses' and claims for `additional home care expenses by health care professionals,' and the plaintiff has not prevailed on such claims.... The assertion of said claims, in the opinion of the Court, had no sound legal basis and resulted in unnecessary prolonged litigation and needless expenses.
"However, the Court has no evidence that said claims asserted by Mr. Taylor ... were made for an improper purpose; further, the Court does recognize that the legal services which Mr. Taylor provided for the plaintiff in reaching an overall conclusion in this litigation is of value to the plaintiff and that Mr. Taylor has paid, or became obligated to pay, certain expenses in presenting the evidence which he presented."
After reviewing the record, we conclude that the trial court did not abuse its discretion in awarding Taylor an attorney fee of 3%.
Osorio also requests an additional fee of 15% on behalf of Taylor. To the extent that Osorio seeks a fee beyond that provided for by § 25-5-90(a), Ala.Code 1975, that request is denied.
AFFIRMED.
CRAWLEY and PITTMAN, JJ., concur.
THOMPSON and MURDOCK, JJ., concur in the result.

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED.
PITTMAN, J., concurs.
CRAWLEY, THOMPSON, and MURDOCK, JJ., concur specially.
YATES, P.J., dissents.
CRAWLEY, Judge, concurring specially.
Like Presiding Judge Yates, I believe that our Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975 ("the Act"), makes an employer liable for the reasonably necessary attendant-care services that a family member provides to an injured worker. I agree with her analysis of the Act and the regulations adopted pursuant to the Act.
However, I concur with the court's decision to overrule the application for rehearing in this case because Salvador Osorio failed to establish by the testimony of an authorized treating physician that the attendant care he was receiving was reasonably necessary medical treatment or attention. See § 25-5-77(a), Ala.Code 1975; Ex parte Southeast Alabama Med. Ctr., 835 So.2d 1042, 1046 n. 4 (Ala.Civ.App.2002).
"In applying § 25-5-77(a), [Ala.Code 1975,] this court has held that where there is no evidence that a medical charge is reasonable, there is no basis for awarding judgment on the charge, *353 because the reasonableness of medical charges is not a matter of common knowledge. Lowe v. Walters, 491 So.2d 962 (Ala.Civ.App.1986)."
Alverson v. Fontaine Fifth Wheel Co., 586 So.2d 216, 217 (Ala.Civ.App.1991).
THOMPSON, Judge, concurring specially.
This court's opinion on original submission was released on May 2, 2003; on May 16, 2003, Salvador Osorio timely filed an application for rehearing. In that application for rehearing, Osorio asserted arguments and cited authorities almost identical to those contained in his original brief on appeal. More than four weeks later, on June 16, 2003, Osorio filed a "supplemental [application] for rehearing," in which, for the first time in an argument totaling one-half page in length, he cited Rule 480-5-5-.30(3)(c), Ala. Admin. Code (Dep't of Indus. Relations). The next day, June 17, 2003, K & D Erectors, Inc., filed a motion to strike the June 16, 2003, "supplemental [application] for rehearing." In that motion, K & D asserted that Osorio had failed to make the argument pertaining to Rule 480-5-5-.30(3)(c) before the trial court, before this court on original submission, and before this court in a properly filed Rule 40, Ala. R.App. P., application for rehearing. A review of the record confirms K & D's assertion that Osorio failed to assert at any time before he filed the "supplemental [application] for rehearing" an argument pertaining to Rule 480-5-5-.30(3)(c).
In its motion to strike, K & D cited Johnson v. Stewart, 854 So.2d 544, 552 (Ala.2002) (opinion on rehearing), in which our supreme court stated:
"The purpose of an application for rehearing is not to cure deficiencies in a party's earlier brief. Indeed, ... `[t]he well-settled rule of this Court precludes consideration of arguments made for the first time on rehearing.' Water Works & Sewer Bd. of the City of Selma v. Randolph, 833 So.2d 604, 608 (Ala.2002) (opinion on rehearing)."
See also Improved Benevolent & Protective Order of the Elks of the World v. Moss, 855 So.2d 1107 (Ala.Civ.App.2003) (a party may not raise a new argument in a brief on application for rehearing); Millar v. Wayne's Pest Control, 804 So.2d 213 (Ala.Civ.App.2001) (this court may not consider arguments not raised before the trial court or raised for the first time in a brief submitted on application for rehearing).
Also, this court may not hold the trial court in error based on theories or arguments that the appellant did not present to the trial court, or, for that matter, to the appellate court on original submission. McLemore v. Fleming, 604 So.2d 353 (Ala.1992); Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988) (our supreme court noted the "long-standing, well established rule that [in order to secure a reversal] the appellant has an affirmative duty of showing error upon the record") (emphasis added, citation omitted).
I am not unsympathetic to Osorio's situation. However, given the arguments he advanced before the trial court and before this court on appeal, I conclude that this court's opinion on original submission is correct. Given the foregoing, I also conclude that Osorio's application for rehearing should be overruled; therefore, I concur in the overruling of the application for rehearing.
MURDOCK, Judge, concurring specially.
In their special writings, Presiding Judge Yates and Judge Crawley both reference note 4 of this court's opinion in Ex parte Southeast Alabama Medical Center, 835 So.2d 1042, 1046 (Ala.Civ.App.2002), an opinion which I authored. That note begins *354 with the statement: "In most cases, an employee will not have a right to medical treatment not recommended by either the initial or second authorized physician." This statement served as context for the subsequent statement in note 4 of that opinion: "Likewise, in most cases, an employer will not have the right to refuse to pay for a medical treatment recommended by an authorized physician."
The issue in Ex parte Southeast Alabama Medical Center was which of two physician-recommended courses of treatment would be followed. The above-quoted passages were part of a predicate for the discussion in Ex parte Southeast Alabama Medical Center of whether the employer was required to pay for a physician-recommended medical treatment (in that case, a surgery) that had been prescribed by the employer-authorized treating physician when a second physician (retained by the employer to advise it regarding the employee's claim) recommended a different course of treatment.
The disputed issue in the present case is sufficiently different than the issue to which note 4 (and the accompanying text) of our opinion in Ex parte Southeast Alabama Medical Center, 835 So.2d at 1046, was directed that I do not find that note apposite in the present case. On the basis of the particular record presented in this case, however, I remain of the opinion that the result reached by this court on original submission was correct. I therefore concur in overruling the application for rehearing.
YATES, Presiding Judge, dissenting.
Because I have reconsidered my earlier position regarding the issue of attendant-care expenses, I must respectfully dissent from the overruling of the application for rehearing as it relates to that issue.
As stated in the opinion on original submission released on May 2, 2003, Salvador Osorio was severely injured when he fell approximately 30 feet from a roof during the course of his employment. He suffered a severe closed-head injury as well as numerous other injuries. As a result of the fall, Osorio was rendered legally blind and deaf in his right ear, and he suffered cognitive and language deficits. Osorio additionally suffered the loss of the use of his left arm and partial paralysis of his left foot. It is undisputed that Osorio was rendered permanently and totally disabled as a result of his workplace accident.
Osorio lives with family members who help care for him; his family members assist him with grooming, personal hygiene, preparing food, bathing, and dressing. Osorio contends that his family is entitled to receive $400 per week in attendant-care expenses from his employer, K & D Erectors, Inc., as reimbursement for caring for him. K & D argues that the Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975 ("the Act"), does not require the payment of such expenses. The trial court specifically found that the Act does not provide for the payment of attendant-care expenses to an employee's family for assistance with the employee's daily living.
I note the well-settled rule of law that the Act must be liberally construed in order to accomplish its beneficent purpose and that all doubts must be resolved in favor of the employee. Bethea v. Bruno's, Inc., 741 So.2d 1090 (Ala.Civ.App.1999). Section 25-5-77(a), Ala.Code 1975, provides, in part:
"[T]he employer ... shall pay the actual cost of the repair, refitting, or replacement of artificial members damaged as the result of an accident arising out of and in the course of employment, and the employer ... shall pay ... reasonably *355 necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident."
Section 25-5-77(a), Ala.Code 1975, also requires an employer to reimburse hospitals, ambulatory surgical centers, licensed outpatient rehabilitation facilities, and accredited diagnostic facilities for treatment provided or services rendered to an employee injured in an on-the-job accident. Section 25-5-1(14), Ala.Code 1975, defines "medical" as: "All services, treatment, or equipment provided by a provider." Section 25-5-1(13), Ala.Code 1975, states that a "provider" is
"[a] medical clinic, pharmacist, dentist, chiropractor, psychologist, podiatrist, physical therapist, pharmaceutical supply company, rehabilitation service, or other person or entity providing treatment, service, or equipment, or person or entity providing facilities at which the employee receives treatment."
(Emphasis added.) Section 25-5-77(a) makes it clear that our Legislature intended to make an employer liable for the "reasonably necessary medical ... attention" that a worker injured in an on-the-job accident requires as a result of that accident. Section 25-5-1(13) makes it equally clear that "medical" attention is not limited to the services of a physician. The services provided by "other person[s] or entit[ies] providing treatment [or] service" are also included.
Further, Rule 480-5-5-.30, Ala. Admin. Code, adopted by the Workers' Compensation Division of the Alabama Department of Industrial Relations and entitled "Home Health Care Service," states, in pertinent:
"(3) Payment may be made for authorized services to the following provider types, subject to the following guidelines:
"....
"(c) Authorized services by nonprofessional family members are reimbursable up to eight (8) hours in any 24-hour period.
"....
"(e) Family members and other persons who are not trained professional nursing personnel may receive payment in the amount of the current minimum wage if the following requirements have been satisfied:
"1. The attendant has received adequate instruction from the authorized treating provider regarding the services to be provided in the home;
"2. The services provided must be beyond the scope of the normal household duties and must be in the nature of services ordinarily rendered by trained professional personnel in hospitals or nursing homes; and
"3. The medical necessity justification shall be sufficient to identify the nature and approximate value of the services provided."
Under the expansive definition of "medical" attention afforded by a "provider" and based on Rule 480-5-5-.30, Ala. Admin. Code, I conclude that the attendant-care services provided by a family member who assists an injured employee (in this case, an employee who is blind, partially deaf, brain-damaged, and partially paralyzed as the result of an on-the-job accident) with eating, bathing, dressing, grooming, and using the toilet are covered by the Act.
The opinion on original submission, relied upon Ex parte City of Guntersville, 728 So.2d 611 (Ala.1998), in holding that the attendant-care expenses sought by Osorio are not provided for by the Act. I find the facts of Ex parte City of Guntersville *356 to be distinguishable from the facts of this case. In Ex parte City of Guntersville, the employee, a policeman, was rendered a paraplegic after being shot in the back while on duty. The employee purchased a van and requested that the City reimburse him for the purchase price of the van. The City agreed to install a wheelchair lift for the van, but it refused to reimburse the employee for the full purchase price of the van. The issue as outlined by the supreme court was whether § 25-5-77(a), Ala.Code 1975, required the City to furnish the disabled employee with a van. In determining that the City was not required to reimburse the employee for the purchase price of the van, our supreme court stated:
"Our workers' compensation system was designed to provide limited, but guaranteed, benefits to employees injured on the job. In addition to those benefits, employers are required to pay for medical and rehabilitative treatment. However, we hold that those benefits do not include the purchase price of a motor vehicle. Put simply, a motor vehicle is not a device that, in and of itself, can serve to improve a disabled claimant's condition. Its only use is to improve the claimant's independent functioning. While human concern would cause one to wish that a disabled person would reach the maximum possible level of independent functioning, we believe that allowing reimbursement for such costs as are claimed in this case would stretch the workers' compensation statute beyond its intended meaning."
728 So.2d at 616-17. The assistance sought in this case  assistance with eating, bathing, dressing, grooming, and using the toilet  is much more basic and is aimed at improving (or preventing the deterioration of) the employee's physical condition, not with merely promoting his independent functioning. The employee in Ex parte City of Guntersville would be no worse off physically if he were not provided the van and wheelchair lift; however, Osorio's physical condition would deteriorate if he was not provided the attendant-care services that his family members provide.
Because I believe the Act provides for the relief sought by Osorio, the next issue to be determined is whether Osorio is entitled to receive reimbursement for his attendant-care expenses in this particular case. In most cases an employee will not be entitled to "reasonably necessary medical ... treatment [or] attention" unless recommended by an authorized treating physician. See § 25-5-77(a), Ala.Code 1975; Ex parte Southeast Alabama Med. Ctr., 835 So.2d 1042, 1046 n. 4 (Ala.Civ.App.2002). In this case, Osorio failed to establish by the testimony of an authorized treating physician that the attendant care he receives is reasonably necessary medical treatment or attention. Ordinarily, the failure to establish the need for medical treatment or attention by the testimony of an authorized physician would defeat a claim for such treatment. However, I conclude in this case that to deny Osorio reimbursement for such basic care as feeding, dressing, grooming, and using the toilet, where the evidence overwhelmingly demonstrates that Osorio needs the attendant care, would be to defeat the overall beneficent purpose of the Act. Further, an analogy could be made between this case and those cases in which the courts have recognized an exception to the general rule that requires expert medical testimony in medical-malpractice cases. Our supreme court has recognized that certain circumstances exist that make the requirement of expert medical testimony unnecessary  i.e., when a sponge is left in a body following surgery, when a surgeon operates on the wrong limb, or when a call for assistance is completely ignored for an *357 unreasonable period of time. See Ex parte HealthSouth Corp., 851 So.2d 33 (Ala.2002). The circumstances of this case indicate that testimony from an authorized treating physician that the attendant care for Osorio is reasonably necessary medical treatment or attention is unnecessary; it is clear from the evidence that such care is necessary. Accordingly, I conclude that Osorio is entitled to the relief sought; therefore, I must respectfully dissent from the overruling of the application for rehearing.
NOTES
[1] Only the Gonzalez Law Firm appealed from the trial court's judgment. Marco Gonzalez is referred to only in his capacity as a member of the Gonzalez Law Firm.
[2] On April 26, 2002, the trial court entered an order specifically denying Gonzalez's claim and lien for legal services filed pursuant to § 34-3-61, Ala.Code 1975.
[3] Section 34-3-61, Ala.Code 1975, provides, in part:

"(a) Attorneys-at-law shall have a lien on all papers and money of their clients in their possession for services rendered to them, in reference thereto, and may retain such papers until said claims are satisfied, and may apply such money to the satisfaction of said claims.
"(b) Upon actions and judgments for money, they shall have a lien superior to all liens but tax liens, and no person shall be at liberty to satisfy said action or judgment, until the lien or claim of the attorney for his fees is fully satisfied; and attorneys-at-law shall have the same right and power over action or judgment to enforce their liens as their clients had or may have for the amount due thereon to them."